UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

THOMAS R. COLEMAN,
                              Plaintiff


               v.                                          05-CV-0176
                                                           (NPM/GJD)

B.G. SULZLE, INC., and
ROBERT E. PIETRAFESA II, President,
                              Defendants

_____

APPEARANCES:                              OF COUNSEL:

MACKENZIE HUGHES LLP                      ARTHUR W. WENTLANDT, ESQ.
Attorneys for Plaintiff                   W. BRADLEY HUNT, ESQ.
101 South Salina Street
P.O. Box 4967
Syracuse, New York 13221-4967


LANER, MUNCHIN, DOMBROW,                  GREGORY R. JAMES, JR.
     BECKER, LEVIN AND
     TOMINBERG, LTD.
Attorneys for Defendants
515 North State Street, Suite 2800
Chicago, Illinois 60610


HANCOCK & ESTABROOK, LLP                  MICHAEL J. SCIOTTI, ESQ.
1500 Mony Tower I,
P.O.  Box 4976
Syracuse, New York 13221


NEAL P. McCURN, Sr. District Court Judge

1

## *MEMORANDUM- DECISION AND ORDER*

### *Introduction*

After being employed for almost thirty years by the defendant Company,
B.G. Sulzle, Inc., on February 12, 2001, plaintiff Thomas R. Coleman was
terminated.  During his nearly 30 years with the Company, plaintiff held several
different titles.  When he was terminated, by defendant Robert E. Pietrafesa II,
plaintiff was Vice President of Human Resources.  The Company maintains that
plaintiff was terminated because "of on-going and cumulative performance
problems."  Affidavit of Robert E. Pietrafesa II (Feb. 3, 2005) at 6, ¶ 41.[1]  The
plaintiff views his termination and the events leading up to it very differently.
Thus, appearing *pro se*, he commenced four separate lawsuits alleging various
types of discrimination and retaliation.  The first three lawsuits, all of which were
filed in 2003, were consolidated by a June 18, 2003, stipulation.

On February 9, 2005, almost exactly four years after his termination,
plaintiff filed the present action alleging two causes of action pursuant to 42 U.S.C.
§ 1981:[2] (1) retaliatory discharge; and (2) creation of a hostile work environment.

---

[1]    This affidavit was submitted in support of defendants' summary judgment motion
in the consolidated actions.

[2]    Section 1981 provides in relevant part as follows:

> All persons within the jurisdiction of the United
> States shall have the same right in every State and
> Territory to make and enforce contracts, to sue, be
> parties, give evidence, and to the full and equal benefit
> of all laws and proceedings for the security of persons
> and property as is enjoyed by white citizens, and shall be
> subject to like punishment, pains, penalties, taxes,
> licenses, and exactions of every kind, and to no other.

The theory of an employment discrimination action under that statute "is that the employer's discriminatory act or, in the case of a hostile work environment claim, its knowing failure to end the overt hostility, is inconsistent with the command of the statute." Evans v. The Port Authority of New York and New Jersey, No. 00 CIV.5753, 2002 WL 77074 (S.D.N.Y. Jan. 22, 2002) (citation omitted).

Currently before the court are defendants' motions to dismiss for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6) and/or for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Alternatively, the defendants are seeking a stay pending the adjudication of plaintiff's consolidated actions which are scheduled for trial on January 17, 2006.

### *Background*

To place this lawsuit and the defense motions in particular in context, a brief history of the consolidated actions is necessary. Almost exactly two years after his termination, on February 11, 2003, plaintiff filed a complaint alleging that the defendants terminated him in retaliation for his "continued opposition to FMLA [Family Medical Leave Act] related policies and practices, which he had a reasonable good-faith belief were unlawful." Co. (03-CV-178) at 2, ¶ 7. Less than a month later, on March 7, 2003, plaintiff filed two more federal court actions. In the first (03-CV-0279), plaintiff alleged that the Company terminated him, failed to promote him and retaliated against him, all in violation of the Age Discrimination in Employment Act ("ADEA"). In the second action (03-CV-0280), plaintiff alleged that he is disabled within the meaning of the Americans with Disabilities Act ("ADA") because he has Attention Deficit Disorder, and that defendants terminated him, retaliated against him and failed to provide him a

---

42 U.S.§ 1981(a) (2003).

reasonable accommodation, all in violation of that Act.

In March 2005, the court granted summary judgment dismissing plaintiff's ADEA claims based upon the removal of his Vice President title and the Company's failure to promote him to Human Resources Vice President. However, the court denied defendants' summary judgment motion as to plaintiff's remaining ADEA claims -- that he was terminated because of his age and that he was terminated in retaliation for complaining of age discrimination. Finding genuine issues of material fact, the court also denied the defendants' summary judgment motions as to plaintiff's FMLA claim for retaliatory termination.

Within a month after the filing of this action, on March 7, 2005, defendant Sulzle filed its motion to dismiss. Defendant Pietrafesa's nearly identical motion was filed roughly six weeks later.

In their initial memorandum, defendants confine their analysis to plaintiff's retaliatory discharge claim. They argue for dismissal of that claim on several grounds. First, defendants assert that plaintiff has impermissibly split his claims between this action and the consolidated actions. Alternatively, defendants argue that this claim is time-barred; and, in any event plaintiff has not sufficiently alleged "the necessary causal connection to prove a *prima facie* case of" retaliatory discharge. <u>See</u> Defendant B.G. Sulzle, Inc.'s Memorandum in Support of its Motion to Dismiss and/or Motion for Judgment on the Pleadings on Plaintiff Thomas R. Coleman's Section 1981 Complaint ("Sulzle Memo.") at 13; Defendant Robert E. Pietrafesa II's Memorandum in Support of his Motion to Dismiss and/or Motion for Judgment on the Pleadings on Plaintiff Thomas R. Coleman's Section 1981 Complaint ("Pietrafasa Memo.") at 3.

### ***Discussion***

4

### *I. Governing Legal Standard*

"The same standards apply to a Rule 12(c) motion for judgment on the pleadings and to a Rule 12(b)(6) motion to dismiss for failure to state a claim." Cowan v. Codelia, No. 98 Civ. 5548, 2001 WL 856606, at *1 (S.D.N.Y. July 30, 2001) (citing, *inter alia*, Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999)). In reviewing the complaint on a motion to dismiss, the court must accept "as true the facts alleged" therein, M. Williams v. Deutsche Bank Securities, Inc., No. 04 Civ. 7588, 2005 WL 1414435, at * 2 (internal quotation marks and citation omitted), and draw all reasonable inferences in the plaintiff's favor. Emergent Capital Inv. v. Stonepath Group, Inc., 343 F.3d 189, 194 (2d Cir. 2003). These Rule 12 motions may be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957)).

The "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." M. Williams, 2005 WL 1414435, at *2 (internal quotation marks and citation omitted). Indeed, a court's task on a motion to dismiss is a limited one. It is "merely to assess the legal feasability of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Id. at *3 (internal quotation marks and citation omitted). It is against these legal standards which the court has scrutinized plaintiff's *pro se* complaint and the parties' respective dismissal arguments.

### *II. 42 U.S.C. § 1981*

The thrust of plaintiff's section 1981 claims is that "while carrying out [his] duties . . . as . . . head of the [Company's] human resources function[,]" he was terminated in retaliation for "advocating on behalf of employees based on their

*race*[.]" Co. at ¶ 4 (emphasis added).  He did this by, among other things, "continuing to hire large numbers of Asian refugees[,]" despite the fact that the Company believed that the hiring of those refugees negatively impacted on its "global competitiveness."  Id. at ¶¶ 8 and 6.  Plaintiff further asserts that when defendant Pietrefesa terminated him because supposedly his performance was unsatisfactory, that was a pretext.  Plaintiff ardently believes that he was actually terminated for "his continued hiring of *refugees*, and . . . [his] opposition to the planned improper re-classification of hourly positions adversely affecting *women*." Id. at 3, ¶ 26 (emphasis added).

According to plaintiff, beginning in 1994, he was criticized for advocating on behalf of and continuing to hire refugees, and this criticism continued up until his February 12, 2001 termination.  Likewise, plaintiff alleges that from mid-1998 through his termination, he was continually criticized for advocating on behalf of women as just described.  The culmination of defendants' actions, plaintiff alleges, was "ongoing retaliation," which in turn "created a hostile work environment under which he was forced to work."  Id. at 3, ¶ 30.

### A.  Scope of Section 1981

#### 1.  Non-Minority Enforcement of Minority Rights

Defendants did not address two preliminary issues.  The first is whether plaintiff, a Caucasian, may seek relief under section 1981.  Resolution of that issue is not readily apparent on the face of the statute.  There is a body of case law, however, which supports the view that "section 1981 protections [may] be[] extended to white plaintiff who have suffered vicariously the defendants' discrimination against racial minorities."  Jowers v. DME Interactive Holdings, Inc., No. 00Civ.4735, 2003 WL 230739, at *3 (S.D.N.Y. Feb. 3, 2003) (citing

6

DeMatteis v. Eastman Kodak Co., 511 F.2d 306, 311-12 (2d Cir. 1975)).  What is more, "a number of courts, . . . , have recognized that an employee who has been the subject of retaliatory discharge because of his or her efforts to vindicate the § 1981 rights of racial minorities may bring an action under § 1981."  Hall v. The New York Hospital, No. 00 Civ.7858 GBD, 2003 WL 22902125, at * 3 (S.D.N.Y. Dec. 8, 2003) (citing cases), aff'd without pub'd decision, 177 Fed.Appx. 790 (2d Cir. 2004); see also Albert v. Carovano, 851 F.2d 561, 572 (2d Cir. 1988) (internal quotation marks and citations omitted) (Section 1981 is available to white plaintiffs who allege that they were "punished for trying to vindicate the rights of minorities protected by" that statute.)  This is precisely the way in which plaintiff Coleman is attempting to invoke section 1981.

### 2. *Women*

The second preliminary issue is whether plaintiff has properly alleged a section 1981 claim based upon his advocating on behalf of women.  At the outset the court observes that nowhere in his complaint does plaintiff distinguish between minority and non-minority women.  That distinction is critical, however, because an essential element of a section 1981 claim is racial, *not* gender, discrimination. See Hicks v. IBM, 44 F.Supp.2d 593, 598 n.2 (S.D.N.Y. 1999) (citations omitted) ("§ 1981 does not prohibit gender discrimination.").  Therefore, plaintiff's claim that he was improperly terminated for "opposi[ng] . . . the planned improper re-classification of hourly positions adversely affecting women[,]" fails to state a section 1981 claim with respect to *non-minority* women.

For a different reason, plaintiff also has failed to state a section 1981 claim with respect to minority women.  The lone allegation arguably pertaining to minority women, as just stated, is that plaintiff "oppos[ed]" what he termed the

7

Company's "*planned* improper re-classification of hourly positions adversely affecting women." Co. at 3, ¶ 26 (emphasis added).  Nothing else in the complaint expands upon or even hints at what is meant by this allegation.  Because his complaint "consist[s] of of nothing more than naked assertions and set[s] forth no facts upon which a court could find a violation of Section 1981[,]" it "fails to state a claim under Rule 12(b)(6)."  See Evans-Gadsden v. Bernstein Litowitz Berger & Grossman, LLP, 332 F.Supp.2d 592, 596 n.3 (S.D.N.Y. 2004)(internal quotation marks and citations omitted).   Accordingly, the court dismisses plaintiff's section 1981claims to the extent they are premised upon his  advocating on behalf of women – minority and non-minority alike.

In light of that ruling, hereinafter the court will confine its analysis to the retaliatory termination and hostile work environment claims predicated upon plaintiff's advocating for and "continued hiring of refugees."  See Co. at 3, ¶ 26. There is a substantial overlap between the Company's and Pietrafesa's arguments in this regard, but Pietrafesa makes two arguments which are unique to him.  The court will address the arguments common to both defendants first.

### III.  Statute of Limitations

Even though defendants raise their statute of limitations defense in the alternative, the court will address this argument first because if defendants prevail, their other arguments would become moot.

#### A.  Continuing Violation Doctrine

Prior to Nat'l R.R. Passenger Corp v. Morgan, 536 U.S. 101, 122 S.Ct. 2061 (2002), "the continuing violation doctrine permitted recovery for discriminatory conduct that occurred outside of the applicable limitations period if the conduct was part of a practice or policy of discrimination." Remigio v. Kelly, No. 04 CIV

8

1877JGKMHD, 2005 WL 1950138, at * 6 (S.D.N.Y. Aug. 12, 2005) (internal quotation marks and citation omitted).  The Supreme Court in <u>Morgan</u> "substantially restricted" that doctrine, however.  <u>Id.</u>  By a bare majority the <u>Morgan</u> Court held that "[e]ach discrete discriminatory act starts a new clock for filing charges under . . . [Title VII]." <u>Morgan</u>, 536 U.S. at 114.  Examples of "discrete discriminatory act[s,]" where the continuing violation doctrine may not be invoked are "termination, failure to promote, denial of transfer, or refusal to hire[.]" <u>Id.</u>

Hostile work environment claims are different from discrete acts though. The <u>Morgan</u> Court held that such claims are distinguishable because by their very nature those claims are "composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'"  <u>Id.</u> at 111.  Hence a plaintiff *may* rely upon the continuing violation doctrine "so long as one act giving rise to [such a] claim was within the limitations period." <u>See</u> <u>Nakis v. Potter</u>, No. 01 Civ. 10047, 2004 WL 2903718, at *10 (S.D.N.Y. Dec. 15, 2004) (citing, *inter alia*, <u>Morgan</u>, 536 U.S. at 117).  In other words, once a plaintiff shows a discriminatory act occurring within the statute of limitations "a court and jury may consider 'the entire time period of the hostile environment' in determining liability." <u>Petrosino</u>, 385 F.3d at 220 (quoting <u>Morgan</u>, 536 U.S. at 117).

The Second Circuit has held that "[t]o assert a continuing violation, Plaintiff must establish both (1) a policy or practice which caused the alleged discrimination, and (2) that the timely claim is continuous in time with the untimely claims." <u>Tiffany v. KDF Company, LLC</u>, No. 3:04-CV-0677, 2005 WL 2739137, at * 4 (N.D.N.Y. Oct. 24, 2005) (citing <u>Quinn v. Green Tree Credit Corp.</u>, 159 F.3d 759, 766 (2d Cir. 1998)).  Thus, "multiple incidents of

discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." Quinn, 159 F.3d at 765 (internal quotation marks and citations omitted).   On the other hand, "a continuing violation may be found where there is proof of specific ongoing discriminatory polic[i]es or practices, *or* where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." Id. (internal quotation marks and citation omitted) (emphasis added).

It should be noted that the Second Circuit generally disfavors the continuing violation doctrine. Remigio, 2005 WL 1950138, at * 8. "Indeed, only compelling circumstances will warrant application of th[is] exception to the statute of limitations." Tiffany, 2005 WL 2739137, at *4 (internal quotation marks and citations omitted).   Some examples of "compelling circumstances" are "where the unlawful conduct takes place over a period of time, making it difficult to pinpoint the exact day the violation occurred; whether there is a express, openly espoused policy [that is] alleged to be discriminatory; or whether there is a pattern of covert conduct such that the plaintiff only belatedly recognizes its unlawfulness." Remigio, 2005 WL 1950138, at *8 (internal quotation marks and citation omitted).

Mindful of the parameters of the continuing violation doctrine as just outlined, the court will consider its applicability *vis-a-vis* plaintiff's section 1981 claims for retaliatory termination and hostile work environment.   Before doing so, however, the court must first address defendants' argument that the continuing violation doctrine does not apply to section 1981 claims at all.

### 1. *Applicability to Section 1981 Claims?*

Defendants acknowledge that the Second Circuit has yet to expressly rule

on that issue.  See Jenkins v. Arcade Building Maintenance, 44 F.Supp. 525, 530
(S.D.N.Y. 1999).  However, they strongly urge this court to follow the Tenth and
Fourth Circuits, and find that plaintiff Coleman may *not* rely upon the continuing
violation theory to extend the period of time for which he may recover damages
under section 1981.  See Thomas v. Denny's, Inc., 111 F.3d 1506 (10th Cir. 1997);
Kornegay v. Burlington Indus., Inc., 803 F.2d 787 (4th Cir. 1986).  The rationale
for not allowing a section 1981 plaintiff to extend the statute of limitations by
employing the continuing violation theory is that that "theory is a creature of the
need to file administrative charges[.]"  See Thomas, 111 F.3d at 1514; see also
Kornegay, 803 F.2d at 788 (because § 1981 does not have either "a provision for
filing charges before bringing suit nor an express cap on back pay similar to that
imposed by" Title VII, . . . [t]he concept of a continuing violation serves no
purpose in" a § 1981 discriminatory wage).  In contrast, section 1981 does not
include such a requirement.  See id.

Given the Second Circuit's "broad view of the application of the continuing
violation doctrine to statutory remedies other than Title VII[,]" such as section
1983 and 1985, Oteri-Harkins v. The City of New York, No. 97-CV-2309, 1998
WL 817689, at *6 (E.D.N.Y. Feb. 5, 1998) (citations omitted), this court declines
to follow the more restrictive approach of the Fourth and Tenth Circuits, however.
In Oteri-Harkins, the court allowed the continuing violation doctrine to be applied
to a section 1981 race discrimination claim.  In addition to relying upon the Second
Circuit's "broad view" of that doctrine, the court there adopted the Seventh
Circuit's reasoning in Malhotra v. Cotter & Co., 885 F.2d 1305 (7th Cir. 1989): "If,
having proved [one] violation, the plaintiff goes on to prove that it began earlier
and that its earlier manifestation caused him additional injury, he can obtain a

11

rcmedy for the increment as well as for the injury inflicted by the recent violation." Id. at 1310. Not only is this reasoning persuasive, but it comports with the weight of authority within this Circuit. See Jenkins, 44 F.Supp.2d at 530 (citing cases). Accordingly, despite defendants' assertion to the contrary, the court finds that the continuing violation doctrine is applicable to section 1981 claims. The issue thus becomes whether plaintiff Coleman has pled sufficient facts to support finding a continuing violation as to one or both of his section 1981 causes of action.

### 2. *Retaliatory Discharge*

The Supreme Court in Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 124 S.Ct. 1836 (2004), held that section 1981 claims are governed by the federal "catchall" four-year statute of limitations, 28 U.S.C. § 1658. Id. at ___, 124 S.Ct. at 1844-46. Based upon Jones, defendants argue that because plaintiff filed the complaint herein on February 9, 2005, "all of plaintiff's claims prior to February 9, 2001 are time-barred[.]" Sulzle Memo. at 9; Pietrafesa Memo. at 12. Plaintiff was not terminated until February 12, 2001. Therefore, because he filed this section 1981 action within four years of his discharge, *i.e.* on February 9, 2005, on the face of it plaintiff's retaliatory discharge claim seems timely.

Nonetheless, defendants argue that such claim is time-barred because it is based in its *entirety* on discrete alleged acts occurring under prior ownership[,]" such as "prior management's criticism, holding a salary increase and instituting a [reading] test[.]"  Reply Brief in Support of Defendant Robert E. Pietrafesa II's Motion to Dismiss and/or Motion for Judgment on the Pleadings ("Pietrafesa Reply") at 6 (emphasis added) and 7; Reply Brief in Support of Defendant B.G. Sulzle, Inc.'s Motion to Dismiss and/or Motion for Judgment on the Pleadings ("Sulzle Reply") at 7 and 8. As defendants read the complaint, these actions

occurred prior to February 9, 2001, and thus plaintiff cannot save this otherwise time-barred discharge claim by invoking the continuing violation doctrine. Plaintiff Coleman responds that he is not seeking to recover for these acts which he implicitly concedes are discrete.  See Pl. Memo. at 11 (Plaintiff "does not seek to recover for any 'discrete acts' besides his termination.")  Rather, the only discrete act for which he is seeking to recover is termination and that claim was timely filed.

Morgan makes clear that a termination claim is based upon a discrete act, which gives rise to a separate cause of action.  Given that plaintiff was terminated on February 12, 2001, and  filed this complaint on February 9, 2005, "[n]o timeliness concerns arise with respect to [that] termination claim because it is based on a single event, . . . , which falls . . . within the limitations period." Petrosino v. Bell Atlantic, 385 F.3d 210, 220 (2d Cir. 2004).  Therefore, the court denies defendants' motion to dismiss plaintiff's section 1981 retaliatory discharge cause of action on statute of limitations grounds.

To the extent that this retaliatory discharge claim is premised upon conduct extending beyond the limitations period, such as placing a hold on plaintiff's salary in 1995, the court emphasizes that after Morgan such discrete conduct is *not* actionable in and of itself.  See Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 176 (2d Cir. 2005).  By the same token though, defendants are conveniently overlooking the fact that  "evidence of an earlier alleged retaliatory act *may* constitute relevant 'background evidence in support of [that] timely claim.'"  Id. (quoting Morgan, 536 U.S. at 113) (other citation omitted) (emphasis added). "Hence, relevant background evidence, such as statements by a decisionmaker *or* earlier decisions typifying the retaliation involved, *may* be considered to assess

liability on the timely alleged action." Id. (and cases cited therein) (emphasis added); see generally Fed. R. Evid. 404(b). Thus, insofar as plaintiff predicates his retaliatory discharge claim upon pre-February 9, 2001, actions, the same *may* constitute "relevant background evidence" to that claim. Of course, at trial the admissibility of such evidence will be in this court's discretion and subject to applicable rules of evidence. Id. at 177, n. 7 (citing, *inter alia*, Fed. R. Evid. 401, 403).

### 3.  *Hostile Work Environment*

As with the retaliatory discharge claim, defendants contend that plaintiff's hostile work environment claim is time barred because it is "based entirely on conduct occurring well outside the limitations period[.]" Sulzle Reply at 7; see also Pietrafesa Reply at 6. Viewing his February 12, 2001, termination as the "conclusion of the hostile environment" claim, plaintiff retorts that because he filed this action within four years of his termination date, based upon the continuing violation doctrine the court "can consider acts occurring more than four years before [his] termination in ruling on . . . [such] claim." Pl. Memo. at 12.

At this pleading stage the focus is on whether plaintiff has sufficiently pled a continuing violation so as to extend the statute of limitations. "A continuing violation may be found to exist, . . . , where a plaintiff can prove that the employer has permitted 1) related and 2) repeated instances of discrimination to continue unremedied so as to amount to a discriminatory policy or practice, and 3) the circumstances are such that the plaintiff was not obligated to have sued earlier." Kendall v. Fisse, No. 00 CV 5154SJ, 2004 WL 1196811, at *3 (E.D.N.Y. May 25, 2004) (citing, *inter alia*, Berry v. Board of Supervisors of La. State Univ., 715 F.2d 971, 981 (5th Cir. 1983)). Clearly  plaintiff Coleman's complaint does not include

a specific allegation of a discriminatory policy or practice.  Despite that omission, it is possible to infer that defendants permitted discriminatory acts "to go unremedied for so long that they amount[ed] to such a policy or practice."  Bloom v. New York City Board of Education, Teacher's Retirement System of the City of New York, No. 00 Civ. 2728 (HBP), 2003 WL 1740528, at * 8 (S.D.N.Y. April 2, 2003) (citing Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001)).  To illustrate, plaintiff alleges, *inter alia*, that from June 1998 through February 12, 2001, defendant Pietrafesa "continually criticized" him for his ongoing hiring of refugees.  See Co. at 3, ¶¶ 24-27.  The liberal standards which govern these Rule 12 motions, *i.e.,* "dismissal is appropriate *only if* it is clear that plaintiff can prove *no set of facts* supporting h[is] claim of a continuing violation[,]" Bloom, 2003 WL 1740528, at * 7 (emphasis added), coupled with plaintiff's *pro se* status at the time the complaint was drafted,[3] persuades the court that at this juncture it would be premature to grant defendants' motion to dismiss the hostile work environment claim on statute of limitations grounds.

By the same token, the court stresses that it is *not* finding that plaintiff's Coleman's claims are *not* time-barred.  It is "merely concluding that defendants have not met the rigorous standard that would justify dismissal under Rule 12." See id. at *10 n. 6.  Furthermore, although it has found plaintiff's allegations of a continuing violation sufficient to overcome these dismissal motions, under the relevant case law, plaintiff has a long row to hoe if he expects to survive a motion

---

[3]     See B. Stephens v. Hofstra University School of Law, No. 01-CV-5388(DRH(MLO), 2005 WL 1505601, at *3 (E.D.N.Y. June 24, 2005) (citation omitted) ("[A] court must construe pro se complaints like [plaintiff's] even more liberally, applying a more flexible standard to evaluate their sufficiency than the standard used to review complaints submitted by attorneys.")

for judgment as a matter of law.

In this regard, plaintiff should bear in mind the following. "[M]ultiple and even similar discriminatory acts that are not the result of a discriminatory policy do not amount to a continuing violation." <u>Kendall</u>, 2004 WL 1196811, at *3 (citing <u>Quinn</u>, 159 F.3d at 765). Likewise, unless plaintiff comes forth with admissible evidence at trial of untimely claims which are "'continuous in time' with those timely filed[,]" in all likelihood he will be unable to avail himself of the continuing violation theory with respect to his hostile work environment claim. <u>See</u> <u>Plumey v. New York State</u>, 389 F.Supp.2d 491, 499 (S.D.N.Y. 2005). Prior to trial, plaintiff Coleman is directed to thoroughly research the continuing violation doctrine and "assess its applicability to h[is] claims before relying on it to review any incidents that . . . fall outside the statute of limitations[.]" <u>See</u> <u>Jenkins</u>, 44 F.Supp.2d at 531. Plaintiff should also be prepared to prove the requisite compelling circumstances described herein.[4]

---

[4]    Almost as an afterthought, in their reply memoranda for the first time, defendants specifically address the hostile work environment claim. Defendants maintain that they are entitled to dismissal of that claim because it is based upon "conclusory allegations[,]" and they were not given "fair notice" of same. Sulzle Reply at 2 and 3; <u>see</u> <u>also</u> Pietrafesa Reply at 3. These arguments are baseless at this point. Once again, the court is giving plaintiff the benefit of his *pro se* status when he drafted the complaint. And once again, the court has serious reservations about the viability of this claim at trial given the type of proof which is necessary to prevail under a theory of a hostile work environment. <u>See</u> <u>Lewis v. State of Connecticut Department of Corrections</u>, 355 F.Supp.2d 607, 620 (D.Conn. 2005) (internal quotation marks and citation omitted) ("A hostile work environment claim . . . requires a showing [1] that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment and [2] that a specific basis exists for imputing the objectionable conduct to the employer.") Nonetheless, giving plaintiff a considerable amount of leeway, the court finds that he has sufficiently plead a hostile work environment claim under section 1981.

As an aside, the court observes that defendants' suggestion that plaintiff should not be "given any special treatment because he is no longer appearing *pro se*" is disingenuous at best. The court is being asked to review the legal sufficiency of pleadings drafted by a *pro se* plaintiff.

## IV.  Causation

Having found no merit to defendants' statute of limitations argument, the next issue facing the court is whether plaintiff has pled "the necessary casual connection" for a retaliatory discharge claim.  See  Sulzle Memo. at 13; Pietrafesa Memo. at 16; and Pietrafesa Reply at 8.  The defendants believe that plaintiff has not and thus they are entitled to dismissal of such claim.

### A.  Pietrafesa

"In order to make out a claim for individual liability under § 1981, a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action[.]"  Patterson v. County of Oneida, 375 F.3d 206, 229 (2d Cir. 2004) (internal quotation marks and citation omitted); see also Callahan v. Consolidated Edison Company of New York, Inc., 187 F.Supp.2d 132, 136-37 (S.D.N.Y. 2002) (footnote omitted) ("To state a Section 1981 claims against [a subordinate of plaintiff's], [plaintiff] . . . must allege some causal link between racially motived behavior by [that individual] and an adverse employment action within the meaning of Section 1981.")  In the present case, Pietrefesa reasons that the "necessary casual relationship" is lacking because as he reads the complaint the alleged section 1981 violations occurred prior to his becoming company President. See Pietrafesa Memo. at 8.  Thus,  Pietrafesa reasons that there is simply too much of a "gap in time" between "incidents which happened in the early to mid 1990's [sic]" and plaintiff's termination.  Pietrafesa Reply at 7.

There are two flaws with Pietrafesa's argument.  The first is that plaintiff

---

It matters not that he is now represented by counsel, especially given the speed with which defendants' filed these motions to dismiss.  Plaintiff's recently retained attorney did not even have an opportunity to move to amend the complaint before he was required to oppose these motions.

Coleman is *not* relying upon the temporal proximity between his discharge and his
advocating on behalf of refugees as a basis for causation.  Plaintiff Coleman
concedes that Pietrafesa's argument might carry some weight if he were relying
upon the temporal proximity to establish an *inference* of discrimination, but he is
not.  See Pl. Memo. at 13.  Rather, plaintiff is relying upon allegations of direct
evidence of causation, *i.e.* "***Defendants told him*** he was terminated in part because
he opposed [their] policy of screening out job applicants who were refugees." Id.
As detailed earlier,  from April 28, 1998 through his February 12, 2001,
termination, supposedly defendant Pietrafesa "continually cited. . . Plaintiff's
continued hiring of refugees[]" as part of plaintiff's alleged "long-standing poor
performance[.]" Co. at 1, ¶¶ 5 and 8; and at 3, ¶¶ 24 and 26.

These allegations are not quite as definitive as plaintiff would have this court
believe in terms of direct evidence of causation.  Nonetheless, when coupled with
the allegation that plaintiff's "efforts . . . to advocate on behalf of employees based
upon race was a determining factor in . . . Defendant's [sic] decision to terminate"
him, id. at 3, ¶ 29, they suffice to defeat defendant Pietrafesa's motion to dismiss
for failure to plead the "necessary causal connection to prove a *prima facie* case of
retaliation." Sulzle Memo. at 13; and Pietrafesa Memo. at 16.  Cf. Sabis
Educational Systems, 52 F.Supp.2d at 876 (internal quotation marks and citation
omitted) (allegations that [d]efendants would not have altered the terms and
conditions of Plaintiff's employment but for his actions in objecting to
employment decisions made on the basis of race . . . allege[d] a a direct link
between plaintiff's objections to discrimination and his discharge, thereby
rendering plaintiff the direct target of defendant's discriminatory action[]")

The second flaw in Pietrafesa's causation argument is due to his selective

18

reading of the complaint. Pietrafesa attempts to avoid individual liability by claiming that it was the prior owners and not he who criticized plaintiff for advocating on behalf of refugees. Plaintiff's complaint is broader than that, however. As mentioned above, plaintiff alleges that both the prior owners/management *and* defendant Pietrafesa criticized plaintiff (criticism which ultimately lead to his discharge) because he continued to hire and advocate on behalf of refugees. Given these allegations, plaintiff cannot hide behind prior owners and management as a way to avoid personal liability. In light of the foregoing, the court finds that defendant Pietrafesa's causation argument is unavailing.

### B.  Defendant Sulzle

A corporation such as defendant Sulzle may also be held liable under section 1981. Blake-McIntosh v. Cadbury Beverages, Inc., No. 3: 96-CV-2554, 1999 WL 643660, at *2 (D.Conn. Aug. 18, 1999) (citations omitted). Defendant Sulzle makes the same argument as did defendant Pietrafesa in terms of the lapse of time between the plaintiff's advocating on behalf of refugees and his termination. As with defendant Pietrafesa, this argument is misplaced. As explained above, plaintiff is *not* relying upon temporal proximity to show causation. Furthermore, because plaintiff has alleged discriminatory acts by defendant Sulzle *and* defendant Pietrafesa (the Company President since January 1998, and prior to that, Executive Vice President), which eventually lead to his termination, Sulzle cannot break the alleged causal connection by arguing that at the latest its criticism of him ended in September 1995. Therefore, the court denies defendants' motion to dismiss plaintiff's retaliatory discharge claim based upon supposedly insufficient allegations of causation.

## *V.  "Claim Splitting"*

The last argument common to both defendants is that the retaliatory discharge claim is duplicative of claims made in plaintiff's consolidated actions. Characterizing plaintiff's pleadings as impermissible claim splitting, defendants assert that instead of alleging section 1981 retaliatory discharge in the consolidated actions, he waited until the filing of this separate lawsuit in March 2005, nearly two years later.  Therefore, defendants argue that they are entitled to dismissal of that particular claim.  If the court disagrees with this claim splitting argument, defendants are seeking a stay of this lawsuit pending the outcome of the trial in the consolidated actions.  The defendants' rationale for a stay is that after judgment in the consolidated actions, the court can decide whether *res judicata* bars this section 1981 retaliatory discharge cause of action.

Plaintiff's response is two-fold.  First he contends that because his section 1981 complaint is void of any reference to the prior actions, and because this is a Rule 12 motion where only the pleadings can be considered, defendants cannot show that this action is duplicative.  Plaintiff's second response is substantive.  He counters that the court should "reject" this claim splitting argument because his consolidated action is factually different than the present action in that the actions involve different types of discrimination.  Alternatively, if the court finds that this action is duplicative of the consolidated actions, plaintiff requests that the court consolidate this action with the previously consolidated actions.

### *A.  Matters Outside the Pleadings*

Turning first to the procedural argument, to be sure, a court is limited in terms of the facts which it may consider in deciding a Rule 12(b)(6) or Rule 12(c) motion.  It is not limited strictly to the pleadings as plaintiff suggests however.  A

court may also take into account "documents attached to the complaint as exhibits and documents incorporated by reference in the complaint." Mangiafico v. Blumenthal, 358 F.Supp.2d 6, __ (D.Conn. 2005) (internal quotation marks and citations omitted). Further, "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." Id. at __ (internal quotation marks and citation omitted). Perhaps most significant in terms of the present case is that "a court may also consider matters of which judicial notice may be taken, . . . so long as the plaintiff relied on the terms and effect of such matters in drafting his complaint." Id. (internal quotation marks and citation omitted).

Here, as Fed. R. Evid. 201 allows, the defendants are requesting the court to take judicial notice of "Plaintiff's Response to Statement of Facts, Affidavit, and Employment Discrimination Charge[.]" Sulzle Reply at 4; and Pietrafesa Reply at 4. Judicial notice is proper, defendants contend, because these documents are: (1) "part of the official court record in Plaintiff's prior . . . lawsuits[;]" (2) "in Plaintiff's possession ([he] drafted them)[;]" and (3) he "relied on the[m] . . . in framing the instant Complaint[.]" Id.

Defendants are right on all three counts. A court "considering a *res judicata* defense . . . "may judicially notice prior pleadings, orders, judgment, and other items appearing in the court records of prior litigation that are related to the case before" it. See Patrowicz v. Transamerica Homefirst, Inc., 359 F.Supp.2d 140, 144 (D.Conn. 2005) (citing, *inter alia*, Ambase Corporation v. City Investing Company

Liquidating Trust, 326 F.3d 63, 72-73 (2d Cir. 2003)).[5]   In fact, the Second Circuit

has gone so far as to acknowledge that it "can affirm the dismissal of a complaint

for failure to state a claim based on the affirmative defense of *res judicata* if all

relevant facts are shown by the court's own records, of which [it]  can take judicial

notice." Ambase, 326 F.3d at 72 (internal quotations and citation omitted).

Plainly, the documents of which defendants are requesting this court to take

judicial notice fall into that category in that they were filed as part of the court

record in the consolidated actions.

    An additional basis for taking judicial notice of plaintiff's affidavit in

opposition to the summary judgment motion in the consolidated cases is that he

"heavily relied upon" it in drafting the complaint herein.  See Mangiafico, 358

F.Supp.2d at __; cf. Blue Tree Hotels Investment (Canada), Ltd. v. Starwood

Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004) (citations

omitted) (court "may also look to public records, including complaints filed in state

court, in deciding a motion to dismiss[]").  Indeed, a comparison of that affidavit

with the complaint herein shows that some paragraphs are nearly identical.

Compare Co. at 1, ¶¶ 6-10; 2, ¶¶ 17-18, with Aff. at 12, ¶ 97, 13, ¶¶ 99-101, 105.

    As the foregoing demonstrates, clearly the plaintiff had notice of the

extraneous documents of which the defendants are asking this court to take judicial

notice.  Thus, there is no harm to plaintiff if the court takes judicial notice of such

documents.  Cf. Mangiafico, 358 F.Supp.2d at __ (internal quotation marks and

citation omitted) ("[W]here plaintiff has actual notice of all the information in the

movant's papers and has relied upon these documents in framing the complaint the

_____

[5]     As will be discussed below, there is a close relationship between claim splitting
and *res judicata*.  Thus, even though Patrowicz does not specifically mention claim splitting,
nonetheless, that rule applies with equal force here.

necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.") In light of the foregoing, the plaintiff's argument that the court cannot refer to matters outside the pleadings in resolving this defense motion to dismiss is unavailing. Accordingly, pursuant to Fed. R. Evid. 201 the court will take judicial notice of the documents listed above, as well the complaints in the consolidated actions.

### B. "Same Transaction or Connected Series of Transactions"

The rule against claim splitting, upon which defendants are relying as one basis for dismissal of plaintiff's section 1981 retaliatory discharge claim, "is well-established." See Salib v. I.C. System, Inc., No. Civ.A.3:01-CV-1083JCH, 2002 WL 31060368, at * 2 (D.Conn. July 24, 2002). That rule "prohibits a plaintiff from prosecuting its case piecemeal, and requires that all claims arising out of a single wrong be presented in one action." Id. (internal quotation marks and citation omitted). There is a close relationship between claim splitting and *res judicata* (also known as claim preclusion). Under the former doctrine, "a party cannot avoid the effects of *res judicata* by splitting her cause of action into separate grounds of recovery and then raising the separate grounds in successive lawsuits." American Stock Exchange, LLC v. Mopex, Inc., 215 F.R.D. 87, 91 (S.D.N.Y. 2002) (citing, *inter alia*, Waldman v. Village of Kiryas Joel, 207 F.3d 105, 110 (2d Cir. 2000)). "Rather, a party *must* bring in one action *all legal theories* arising out of the same transaction or series of transactions." Id. (citation omitted) (emphasis added); see also Johnson v. Ashcroft, 378 F.3d 164, 172 n.10 (2d Cir. 2004) (citation omitted) ("In civil suits a litigant must advance all available evidence and legal arguments relating to a claim or controversy in the context of a single proceeding.") Thus, *res judicata* bars claims in a subsequent

23

action where, among other things, "the claims asserted in th[at] subsequent action were, *or could have been raised* in the prior action." Pike v. Freeman, 266 F.3d 78, 91 (2d Cir. 2001) (emphasis added).

"Whether a claim . . . could have been raised []in [a prior action] depends in part on whether the same transaction or connected series of transactions is at issue, and whether the same evidence is needed to support both claims." Id. (internal quotation marks and citation omitted).  Under the "same transaction" test, "the question is whether the claim was sufficiently related to the claims that were asserted in the first proceeding that it *should have been* asserted in that proceeding." Id. (citation omitted). There are three factors relevant to the "same transaction" inquiry: (1) "whether the underlying facts are related in time, space, origin, or motivation[;]" (2) "whether they form a convenient trial unit[;]" and (3) "whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Id. (internal quotation marks and citation omitted). Consideration of these factors does not involve a rigid, mechanical exercise. Rather, "[t]he notion of a 'transaction is prismatic in the sense that it takes coloration from its surroundings." Interoceanica Corporation v. Sound Pilots, Inc., 107 F.3d 86, 91 (2d Cir. 1997).  Thus, transaction "must be given a flexible, common-sense construction that recognizes the reality of the situation." Id. (citation omitted).

Defendants assert that each of the above enumerated factors is present here. They believe that the facts upon which plaintiff's section 1981 retaliatory discharge claim is based are "substantially related" to the facts herein, and that his "motivation for the suits is identical." See Sulzle Memo. at 7; Pietrefesa Memo. at 9.  The consolidated action and the present actions "form a convenient trial unit"

24

because in defendants' view the evidence is "the same or similar[.]" <u>Id.</u> at 7; <u>Id.</u> at 10. Finally, the defendants contend that "it is reasonable to expect that Plaintiff should have brought all of this claims together." <u>Id.</u> at 8; <u>id.</u> at 10. As previously noted, because each of plaintiff's four lawsuits allege different types of discrimination, he counters that he has not impermissibly split his claims.

Plaintiff's argument is unavailing. He cannot "avoid the effects of res judicata by 'splitting' his claim into various suits, based on different legal theories (with different evidence 'necessary' to each suit)." <u>Waldman</u>, 207 F.3d at 110 (citations omitted). Plaintiff cannot split his retaliatory discharge claims in this way because "[i]t is the identity of facts surrounding the occurrence which constitutes the cause of action, not the legal theory upon which [plaintiff] chose to form h[is] complaint." <u>Id.</u> (internal quotation marks and citation omitted). Consequently, the Second Circuit has "consistently h[e]ld that the facts essential to the barred second suit need *not* be the same as the facts that were necessary to the first suit." <u>Id.</u> at 110-111 (emphasis added). Therefore, plaintiff cannot circumvent the rule against claim splitting simply because the facts "essential" to his section 1981 retaliatory discharge claim (*i.e.* his "continued hiring of refugees," <u>see</u> Co. at 3, ¶ 26), are not the same as those "necessary" to the claims in the consolidated actions wherein he alleges age discrimination and retaliatory termination for opposing policies which plaintiff believed violated the FMLA.

Additionally, focusing on the three criteria identified above which are relevant to the "same transaction" test, demonstrates that plaintiff's section 1981 retaliatory discharge claim is "sufficiently related" to his claims in the consolidated actions, such that he "should have asserted" the section 1981 claim in those earlier actions. First, the overlapping facts are "related in time, space, origin or

motivation[,]" in that they all pertain to plaintiff's termination on February 12, 2001, and the events leading up to it, including his alleged unsatisfactory performance. See Pike, 266 F.3d at 91.

In this respect, the present case stands in sharp contrast to N.L.R.B. v. United Technologies Corp., 706 F.3d 1254 (2d Cir. 1983), a case upon which plaintiff is relying to counter defendants' claim splitting argument. Unlike the present cases where the acts complained of occurred during the same time frame, in United Technologies the allegations involved incidents which happened "more than a decade apart[.]" See id. at 1260. The acts in United Technologies also occurred at different worksites and "concerned *different employees* engaged in *different acts*[.]" Id. (emphasis added). Here, the employee is the same -- plaintiff Coleman. And in both this action and the consolidated actions plaintiff alleges retaliatory termination based upon his advocating on behalf of minorities (refugees here and women in the FMLA action). Further, the alleged retaliatory effect in the two actions is the same; plaintiff was terminated. Thus, at the end of the day, regardless of the legal theory which plaintiff advances, "the factual predicate underlying [the] claims in [these] successive actions [is] substantially identical," thus satisfying the first element of the same transaction test. See Schenk v. Mine Management Company, Inc., No. 89-CV-97, 1997 WL 31400 at *3 (N.D.N.Y. Jan. 23, 1997) (internal quotation marks and citation omitted) (Pl's Memo. exh. A thereto).

Second, this section 1981 action and the consolidated actions would form a "convenient trial unit" given that they involve the same incident -- plaintiff's termination and the reasons therefore. Further, in all likelihood, the trial of this action would involve the same witnesses and evidence as the trial of the

consolidated actions.  This is especially so taking into account that Sulzle and Pietrafesa are defending these lawsuits by claiming that plaintiff was terminated *solely* for his poor performance.

Third, "treating the various overlapping facts as a single transaction or series of related transactions would have conform[ed] to the parties' expectations." <u>Waldman</u>; 207 F.3d at 112 (citation and internal quotation marks omitted).  For all of these reasons, the court finds that the section 1981 retaliatory discharge claim herein is "sufficiently related" to the claims in the consolidated action such that plaintiff "should have" asserted the same in the consolidated action.  <u>See Pike</u>, 266 F.3d at 91.  Thus, the court finds that allowing plaintiff to pursue his retaliatory discharge claim in this section 1981 action would result in piecemeal litigation, in violation of the prohibition against claim splitting.

### *C.  Consolidation?*

The court is well aware, as defendants are quick to point out, that "[i]f claim-splitting is involved, simple dismissal is . . . appropriate because plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time."  <u>Salib</u>, 2002 WL 31060368, at *2 (internal quotation marks and citation omitted).  Dismissal is not the only option, however. Instead of outright dismissal, a court may "stay the second suit, dismiss it without prejudice, enjoin the parties from proceeding with it, or consolidate the two actions."  <u>Curtis v. Citibank, N.A.</u>, 226 F.3d 133, 138 (2d Cir. 1990) (citations omitted).  These options exist "[b]ecause of the obvious difficulties of anticipating the claim or issue-preclusion effects of a case that is still pending[.]"  <u>Id.</u>  Of these options, defendants request a stay "pending final resolution of the other three suits, at which time the court can determine whether the Plaintiff's latest claims are

barred under the doctrine of *res judicata*." Sulzle Memo. at 9; Pietrafesa Memo. at 11 (footnote omitted). Further, defendants oppose consolidation on the basis that it would allow plaintiff to add claims after the close of discovery.

There is some merit to defendants' position. However, the fact that until recently plaintiff was acting *pro se*, combined with the court's "general power to administer its docket," see Curtis, 226 F.3d at 138 (citations omitted), persuades the court that in the interest of judicial economy, plaintiff's section 1981 retaliatory discharge claim should be consolidated with the previously consolidated actions.

## VI.  *Defendant Pietrafesa*

Defendant Pietrafesa contends that he is entitled to dismissal of the complaint as against him because the allegations therein are insufficient to support a claim of individual liability under section 1981.  In Pietrafesa's view, the allegations of personal involvement are limited to his supposed "reli[ance] on prior management's criticisms of Plaintiff[.]" Pietrafesa Memo. at 8.  "[T]here are no allegations," according to Pietrefesa, that he "personally decided to take any action against Plaintiff because Plaintiff advocated for refugees of color." Id.  Thus, Pietrafesa asserts that the complaint is deficient because  plaintiff has failed to plead that  Pietrafesa "intentionally and personally caused Plaintiff's rights to allegedly be infringed." Id.  Plaintiff did not directly respond to these claimed deficiencies in his complaint.

### A.  *Personal Involvement*

It stands to reason that "personal liability under section 1981 must be predicated on the actor's *personal involvement*." Patterson, 375 F.3d at 229 (internal quotation marks and citation omitted) (emphasis added).  The Second Circuit has defined personal involvement  in this context as including "not only

direct participation in the alleged violation but also gross negligence in the supervision of subordinates who committed the wrongful acts and failure to take action upon receiving information that constitutional violations are occurring." Id. (citation omitted).  Applying that definition to the present case shows that defendant Pietrafesa's alleged conduct falls into the category of "direct participation," and thus, in turn, plaintiff has alleged the requisite personal involvement.

As it must on this motion to dismiss, the court "construe[s] [the complaint] broadly and interpret[s] [it] to raise the strongest arguments that [it] suggest[s]." Weixel v. Board of Educ. City of New York, 287 F.3d 138, 146 (2d Cir. 2002) (internal quotation marks and citation omitted).  Such a liberal reading is especially important when "dealing with *pro se* complaints [(such as plaintiff Coleman's)[6]] alleging civil rights violations." Id. (citation omitted).  Given that lenient standard, the complaint herein can be fairly read as alleging that defendant Pietrafesa terminated plaintiff due to plaintiff's "continued . . . hir[ing] [of] many refugees," and his "efforts . . . to advocate on behalf of employees based upon race[.]" See Co. at 3, ¶¶ 10 and 29.  Taking the complaint as a whole, such allegations suffice to show the requisite personal involvement at this pleading stage. See Jones v. SABIS Educational Systems, Inc., 52 F.Supp.2d 868, 876-77 (N.D.Ill. 1999) (denying motion to dismiss section 1981 claims for lack of personal involvement where defendant "informed plaintiff that he was terminated[]" allegedly in retaliation "for advocating the rights of minorities[]").

The court is fully aware of Wyatt v. Zuckerman, No. 93 Civ. 8027LTSHBP,

--------

[6]    Although plaintiff now is represented by counsel, he was not at the filing of this complaint.

29

2005 WL 525256 (S.D.N.Y. March 7, 2005) (Pietrafesa Memo., exh. B thereto),
one of the cases upon which Pietrafesa relies to support his argument that plaintiff
has failed to adequately plead individual liability.  The co-publisher in Wyatt only
made the final hiring decisions; he was not involved in the hiring process.  Instead,
the co-publisher based his employment decisions upon the "rankings" of senior
editors, "which were in turn based on the supervisors' evaluations."  Id. at *10.  In
short, the co-publisher had no in-put in the hiring process.

Try as he might to distance himself from the decision to fire plaintiff, and
thus place himself squarely within the Wyatt court's holding, defendant Pietrafesa
is unable to do that.  Not only was he responsible for terminating plaintiff, but
allegedly Pietrafesa was involved in the decision making process leading up to that
termination.  This is not a situation where Pietrafesa came in at the eleventh hour
and wholesale adopted the prior management's assessment of plaintiff's work.
Rather, allegedly Pietrafesa himself  "conducted an unannounced Performance
Appraisal" and also met with plaintiff on other occasions.  Co. at 2, ¶ 22; and 3, ¶¶
23-24.  Plaintiff claims that during those times Pietrafesa "continually cited. . .
[p]laintiff's continued hiring of refugees[]" as a basis for "[his] alleged long-
standing poor performance[.]"  See Co. at 3 at ¶¶  24 and 26.  These allegations
belie Pietrafesa's contention that he was, in effect, "just the messenger," i.e.
delivering the termination decision based solely upon criticism from prior owners.
Thus the court finds that the foregoing allegations of Pietrafesa's role in the
termination process suffice to show his personal involvement, at least at this
pleading stage.  Cf. Franchitti v. Bloomberg, L.P., No. 03 Civ. 7496 LAKJCF,
2004 WL 2366183, at * 4 (S.D.N.Y. Oct. 20, 2004) (citation omitted) ("[E]ven if
[plaintiff's supervisor] was not the ultimate decision maker responsible for the

plaintiff's termination, the allegation that she was instrumental in achieving that result is sufficient to state a cause of action under section 1981.") <u>Wyatt</u> does not change this result.

### B.  Intent

In addition to alleging personal involvement, a plaintiff asserting a section 1981 claim "must allege sufficient facts to support . . . an intent to discriminate on the basis of race by the defendant[.]" <u>Hicks</u>, 44 F.Supp.2d at 598.   As to this element, "in order for a § 1981 claim to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must *specifically allege* the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." <u>Evans-Gadsen</u>, 332 F.Supp.2d at 596 n.3 (internal quotation marks and citation omitted) (emphasis added).  "[C]onclusory statements of discriminatory intent are not enough to survive a motion to dismiss." <u>Hicks</u>, 44 F.Supp.2d at 598 (citing <u>Yusuf v. Vassar College</u>, 35 F.3d 709, 713 (2d Cir. 1994)).  Succinctly put, "the real question is whether the complaint alleges facts sufficient to raise an inference of racial motivation." <u>Weiss v. La Suisse</u>, 131 F.Supp.2d 446, 450 (S.D.N.Y. 2001)(internal quotation marks and citations omitted).

In the present case, plaintiff alleges that although defendant Pietrafesa "continually cited" plaintiff's "alleged long-standing poor performance" as the basis for terminating him, supposedly that "criticism" was "unwarranted and "retaliatory[]" in that it was partially based upon "[p]laintiff's continued hiring of refugees[.]" Co. at 3, ¶¶ 24; 25; and 26.  In a similar vein, plaintiff alleges, among other things, that his "efforts . . . to advocate on behalf of employees based upon race was a determining factor in Defendant's [sic] decision to terminate [him.]" <u>Id.</u>

at 3, ¶ 29.  Again, affording this *pro se* complaint a liberal reading, the court finds that plaintiff Coleman has satisfied the minimum pleading requirement with respect to intent.

Evans-Gadsen, a case upon which defendant Pietrafesa relies to support his assertion that plaintiff has not met that burden, is distinguishable.  Hence, Evans-Gadsen does not mandate a contrary finding here.  There the plaintiff alleged "sabotage and a litany of conspiracy theories against the [i]ndividual [d]efendants[,]" the claimed purpose of which "was to make her look inept and incompetent[.]"  See Evans, 332 F.Supp.2d at 597.  Clearly such allegations are not tantamount to racial discrimination.  Unlike Evans, as set forth above, plaintiff Coleman does allege racially motivated discrimination, albeit not in the strongest possible terms.  The specific events outlined above, and the plausible inferences which can be drawn therefrom, show that plaintiff has adequately pled the personal involvement and intent necessary to support a section 1981 retaliatory discharge claim against defendant Pietrafesa -- at least at this early stage of the proceedings.  Consequently, the court denies defendant Pietrafesa's motion to dismiss to the extent it is based upon plaintiff's failure to allege personal involvement and intent on the part of that defendant.

To summarize, the court HEREBY:

(1) DISMISSES plaintiff's section 1981 claims insofar as they are premised upon his advocating on behalf of women;

(2) DENIES defendants' motion to dismiss[7] both the retaliatory discharge and hostile work environment claims on statute of limitations grounds;

---

[7]     In this summary, motion to dismiss shall be read as including defendants' alternative motion for judgment on the pleadings.

32

(3) DENIES defendants' motion to dismiss the hostile work environment claim for failure to adequately plead causation and for lack of notice;

(4) DENIES defendants' motion to dismiss the retaliatory discharge claim for failure to adequately plead causation;

(5) DENIES defendants' motion to dismiss the retaliatory discharge claim based upon claim splitting;

(6) DENIES defendants' motion for a stay;

(7) *SUA SPONTE* consolidates this action with the consolidated actions scheduled for trial on January 17, 2006 (03-CV-178; and 03-CV-279); and

(8) DENIES defendant Robert E. Pietrafesa II's motion to dismiss the claims against him for failure to adequately alleged personal involvement and/or intent.

To the extent there has not been discovery as to the claims raised in this section 1981 action, the court further ORDERS the same, if necessary, to be completed within 30 days of the date hereof, *i.e.* by December 22, 2005.  Any discovery issues which may arise should be promptly brought to the attention of this court and the parties should keep in mind that the scope of such discovery is extremely limited in accordance with the rulings herein.

IT IS SO ORDERED.

Nov. 2, 2005

Neal P. McCurn,
Senior U.S. District Court Judge